IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
v.                             )          No. 3:10-CR-159
                               )
KEVIN TRENT BUSSELL, et. al.,  )          (VARLAN/SHIRLEY)
                               )
          Defendants.          )

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28

U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District

Court as may be appropriate. This case is before the Court on Defendant Leonard Bussell's Motion

to Suppress All Intercepted Communications Wherein Leonard Bussell Is a Participant in the

Communication [Doc. 171][1] and memorandum in support [Doc. 173, Part IV], both filed on March

11, 2011, adopted by Defendant Kevin Trent Bussell and Defendant Geneva Bussell [Doc. 343]. On

April 12, 2011, the Government responded [Doc. 223] in opposition to this motion and to Defendant

Leonard Bussell's Motion to Suppress Evidence Seized from 445 Moody Hill Road [Doc. 172], the

recommendation as to disposition of which will appear in a separate report and recommendation.

The parties appeared before the undersigned for a motion hearing on May 13, 2011. Assistant

---

[1]The Court notes that Defendant Leonard Bussell died on October 6, 2011 [Ex. 1 to Doc. 346]. Counsel for Defendant Leonard Bussell filed a Motion to Dismiss by Reason of Abatement on October 24, 2011 [Doc. 345]. While the instant motion is no longer relevant to Defendant Leonard Bussell's case, the findings of the Court in this Report and Recommendation shall apply to Defendants Kevin Trent Bussell and Geneva Bussell's adoption [Doc. 343] of Defendant Leonard Bussell's Motion to Suppress All Intercepted Communications Wherein Leonard Bussell Is a Participant in the Communication [Doc. 171].

United States Attorney Alexandra Hui appeared on behalf of the Government. The following defense counsel were present, along with their clients: Attorney John E. Eldridge, representing Defendant Kevin Trent Bussell, Attorney G. Scott Green, representing Defendant Leonard King Bussell, Attorney Tommy K. Hindman, representing Defendant Geneva Bussell, Attorney Russell T. Greene, representing Defendant Jackie Mize, Attorney Jonathan D. Cooper, representing Defendant Nicole Seal, and Attorney Robert R. Kurtz, representing Defendant Jessica Wilson. Attorney Mike Whalen represented Defendant Randy Williams,[2] and Attorney Gerald L. Gulley, Jr., represented Defendant Althea Gamble, who were not present. After hearing the arguments of the parties, the Court took the motions under advisement.

## I.  POSITIONS OF THE PARTIES

The Defendants are charged in varying counts of a seven-count Indictment [Doc. 3] with conspiracy to distribute controlled substances, firearms offenses, and money laundering. In their motion to suppress, the Defendants argue that the applications for the Title III wiretaps, the product of which served as the basis for the support of the search of 445 Moody Hill Road, were insufficient to support the orders authorizing the wiretaps. Specifically, the Defendants argue that the agents investigating their case were employing traditional investigative techniques (confidential informants, controlled purchases, recorded telephone calls, video and audio recordings from within Defendant Kevin Trent Bussell's Tennessee and Florida residences) prior to and at the time of the wiretap applications and that those techniques were and would have continued to be successful. The

---

[2]Defendant Randy Williams withdrew all of his pending motions at the start of the May 13, 2011 motion hearing.

Defendants further suggest that the conspiracy exceeded a membership of seventy persons and that law enforcement could have performed surveillance on those individuals, and could have obtained pharmaceutical records as part of its investigation. The Defendants suggest that the case against them at the time of the first wiretap application was already overwhelming and that a wiretap was unnecessary. Accordingly, the Defendants argue that their voices, identified pursuant to the wiretaps, should be suppressed and should not have been used as a basis for probable cause to search their residences. At the May 13, 2011 hearing, the Defendants also requested an evidentiary hearing to enable the Court to hear and consider the testimony of the affiant in determining whether the applications met the necessity requirement of 18 U.S.C. § 2518(1)(c).

The Government responds that the Defendants' motion to suppress should be denied because the affidavits utilized as the wiretap applications in this case gave "a full and complete statement" as required by 18 U.S.C. § 2518(1)(c), by discussing the information the agents anticipated obtaining from the proposed intercepted communications, listing and explaining the investigative techniques (physical surveillance, grand jury subpoenas, interviews, search warrants, infiltration by undercover officers, cooperating individuals, controlled purchases, a financial investigation, review of telephone records, and discarded trash examination) the agents had either considered or attempted and explaining why each was inadequate, and specifying why each of the techniques would fail in the investigation of this particular case. The Government argues that the Defendants' contention that the wiretaps were unnecessary is based on their "subjective evaluation of the investigation" and that the wiretaps were needed to uncover the full scope of the conspiracy in this case. With regard to the Defendants' request for an evidentiary hearing on this matter, the Government responded that the Court should only consider the contents of the four corners of the

3

affidavits in determining necessity and should not consider additional information which was not before the district judge when he made his determinations.

## II. BACKGROUND

The Defendants' motion centers on the two applications for authorization to intercept telephone conversations submitted by Special Agent Bethel Poston of the Drug Enforcement Administration ("DEA") on October 20, 2010 and November 5, 2010, respectively. Special Agent Poston's October 20, 2010 application pertained to Defendant Kevin Trent Bussell's landline telephone, (423) 626-8634, and included an affidavit of Agent Poston. The Honorable Thomas W. Phillips, United States District Judge, signed an order authorizing the wiretap requested by that application. The interception of the landline telephone began on October 21, 2010. On November 5, 2010, Agent Poston applied for authorization to intercept Defendant Kevin Trent Bussell's cellular telephone, (423) 489-7025, and he provided another affidavit in support of his request at that time. District Judge Phillips again authorized this wiretap, and the interception of the cellular telephone began on November 8, 2010. Both of Agent Poston's affidavits submitted as applications for wiretaps in this case remain under seal [Doc. 327] at this time. Following several weeks of telephone call interception, the agents in this case utilized the information obtained from the calls to apply for several search warrants, the results of which are the subject of other suppression motions [Doc. 172, Doc. 179, Doc. 195, Doc. 204, Doc. 205, Doc. 206, Doc. 207, and Doc. 209], to be addressed by report and recommendation separately in this case.

*First Affidavit of Agent Poston*

The 48-page affidavit [Sealed Exhibit 1 to Legal Argument of May 13, 2011; Doc. 327] in support of the applications for an order authorizing the interception of wire communications, filed on October 20, 2010, describes the information expected to be obtained from intercepting communications from Defendant Kevin Trent Bussell's landline home telephone, including "the identities and roles of accomplices, coconspirators, and other participants," "the existence and location of drug records and drug proceeds," the resources utilized to finance the illegal activities investigated, the full nature and extent of the drug operation, and other information. [October 20, 2010 affidavit of Agent Bethel Poston, ¶ 9]. The affidavit states that "[n]ormal investigative procedures have been employed and have either been marginally successful or have failed, are reasonably unlikely to succeed if attempted, or are too dangerous to employ[.]" [¶ 10]. The affidavit goes on to describe the involvement and utilization of two confidential sources with knowledge of the drug trade and connections to the conspiracy, including consensually recorded telephone calls in the presence of Agent Poston, video and audio recorded controlled purchases, a traffic stop made based on information provided by a confidential informant, audio and video recordings around Defendant Kevin Trent Bussell's Florida residence, and lists of co-conspirators provided by the informants. Next, the affidavit details the investigative findings resulting from toll record and pen register analysis of the target telephone.

As to the need for interception, the affidavit states that Agent Poston believed that the wiretap was the "best and only available technique that ha[d] a reasonable likelihood of accomplishing the goals" of the investigation, "and of securing the evidence necessary to prove beyond a reasonable doubt that the interceptees and subjects, and others yet unknown, are engaged

in the above-described offenses." [¶ 34]. The affidavit further indicates that intercepting wire communications would have likely been the only way to discover and identify members of the conspiracy yet to be known to or confirmed by Agent Poston, and the affidavit describes in detail why pen registers have been unsuccessful in this regard, specifying the reasons why a wiretap would likely allow Agent Poston to succeed. The affidavit additionally explains that a wiretap is necessary to obtain more detailed information about the full scope of the conspiracy because arresting only some members of the conspiracy without sufficient evidence to successfully prosecute all involved would not halt the Bussell organization's operations. The affiant indicated that he believed the wiretaps sought would produce sufficient probable cause to apply for search warrants of properties related the conspiracy, and the affidavit described what would likely be sought at those properties.

The October 20, 2010 affidavit next describes the alternative investigative techniques utilized or considered, and the reasons why each was insufficient. As to physical surveillance, the affidavit contends that while it had been conducted or attempted during the investigation up to that point, it was "extremely difficult and potentially dangerous" in this case because many members of the conspiracy "live in a very rural, secluded, close-knit area of upper-east Tennessee." [¶ 49]. As a result, "[o]utsiders and unfamiliar vehicles are very quickly observed." [¶ 49]. The affidavit describes that the property, on which many of the conspiracy members reside, has only one entrance and exit, furthering the likelihood that the subjects would easily notice those investigating them and potentially attempt to flee. In addition to describing its lack of success, the affidavit explains why physical surveillance is unlikely to produce the evidence sought to further the investigation. Moreover, Agent Poston indicated in the affidavit that he had information to believe both that the conspirators may be armed and that Defendant Kevin Trent Bussell utilized "lookouts," and the

6

affidavit describes specific incidents supporting the assertion that the members of the organization were extremely careful in their operations.

In discussing other alternative traditional investigative techniques, the affidavit details why both grand jury subpoenas and interviews of associates would not produce sufficient information "concerning the identities of all of the persons involved in the conspiracy, the source of the drugs, financing, the location of records, drugs, or other pertinent information regarding the subject crimes." [¶ 57]. Additionally, the affidavit discusses search warrants, infiltration by undercover officers, cooperating witnesses, controlled drug purchases by undercover officers or cooperating individuals, examination of discarded trash, the possibility of a financial investigation, and the use of pen registers and toll analysis. For each of those techniques, the affidavit discusses whether or not they had been utilized at that point, and why they were not sufficient ways of obtaining the desired information, at times using specific examples from prior drug trafficking investigations in which Agent Poston was involved. The downside of many of the considered but not yet utilized techniques involves Agent Poston's belief, based on prior training and experience, that members of the organization would be alerted to the investigation and react accordingly (fleeing, hiding, and/or destroying contraband or assets not yet identified by law enforcement).

As to possible infiltration of the organization by undercover officers, the affidavit points out that the conspiracy is made up almost entirely of family members related by blood or marriage, with the other members being long-time associates of Defendant Kevin Trent Bussell. The affidavit describes that the members of the organization "are extremely suspicious of newly developed associates, and it would take an extraordinary amount of time to develop even an entry level relationship." [¶ 62]. Moreover, the affidavit explains that the area of Tennessee in which the

7

members of the organization live has specific customs, which a potential infiltrator would not understand, making this technique especially dangerous in this case. The affidavit additionally provides specific ways in which Defendant Kevin Trent Bussell's paranoia and watchfulness related to his associates would make the infiltration of an undercover agent into the organization exceedingly difficult.

In regard to the cooperating witnesses, the affidavit states that they have provided reliable information and have agreed to testify at trial, but that each of the current cooperating individual's roles in the organization is too limited to obtain the full breadth of information sought by the investigation and that law enforcement was unable to develop additional cooperating individuals at that time. Additionally, the affidavit asserts that the rural and secluded location of the residences utilized by the conspirators make the possible examination of discarded trash difficult to do without attracting the attention of the subjects. The affidavit describes that instituting a financial investigation would likely alert the suspects to the investigation of them, given the close-knit community in which they live. Further, Agent Poston indicated that he believed that Defendant Kevin Trent Bussell hid his drug proceeds in "old-fashioned" ways such as "burying cash on his property," rendering a traditional financial investigation largely obsolete in the instant case [¶ 75].

*Second Affidavit of Agent Poston*

The 53-page affidavit [Sealed Exhibit 2 to Legal Argument of May 13, 2011; Doc. 327], filed on November 5, 2010, served as an application to intercept Defendant Kevin Trent Bussell's cellular telephone, (423) 489-7025. The November 5 affidavit attached and incorporated the October 20 affidavit as an exhibit and asserted that the interception of Defendant Kevin Trent

8

Bussell's landline telephone began on October 21, 2010 and was continuing at that time. The November 5 affidavit includes more target suspects than the October 20 affidavit did. This affidavit provides much of the same background information on the conspiracy's operation as the previous affidavit, and the November 5 affidavit provides some examples of conversations relating to drug trafficking, which had intercepted from Defendant Kevin Trent Bussell's home telephone since October 21, 2010. The affidavit discusses the renewed pen register authorization and the telephone numbers monitored by it.

As to the need for the interception, the November 5 affidavit states largely the same needs as the October 20 one, with some assertions that the intercepted telephone calls from the home telephone have not revealed some of sources and information sought by the agents. The November 5 affidavit also lists the names and telephone numbers of pain clinics and pharmacies in southern Florida, which telephone toll analysis had shown Defendant Kevin Trent Bussell to have contacted from his cellular telephone. New information from confidential sources indicating that Defendant Kevin Trent Bussell had conversations with co-conspirators about their illicit activities on the target cellular telephone is also included in the affidavit to show the need for the wiretap. This affidavit again asserts that sources and others with connections to the illicit activities of the conspiracy would be revealed if the wiretap was authorized.

The discussion as to alternative investigative techniques in the November 5 affidavit is largely the same as the discussion in the October 20 affidavit, discussing each traditional technique and explaining why it would be specifically unsuccessful in this particular investigation. As to cooperating individuals, the November 5 affidavit indicates that one of law enforcement's cooperating witnesses was no longer being utilized by the investigation because of a return to

participation in the conspiracy and that the other continued to play only a limited role in the drug trafficking organization, limiting that person's access to some of the information sought by the investigation.

## III. ANALYSIS

A magistrate judge's finding of probable cause to issue a search warrant is entitled to "great deference" unless the finding is arbitrary. United States v. Leake, 998 F.2d 1359, 1362-63 (6th Cir. 1993). In this respect, "the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). The Sixth Circuit has applied this standard to orders authorizing auditory surveillance as well as to more traditional search warrants:

> Since the issuing judge is in the best position to determine all of the circumstances in the light in which they may appear at the time, 'great deference' is normally paid to the determination of an issuing judge. . . . . [T]he fact that a later trial judge or reviewing court may feel that a different conclusion was appropriate does not require, nor even authorize, the suppression of evidence gained through such a warrant. In United States v. Lambert, 771 F.2d 83, 93 (6th Cir.), cert. denied, 474 U.S. 1034, 106 S. Ct. 598, 88 L. Ed. 2d 577 (1985), we held that a magistrate's determination on the question of probable cause will not be reversed if the record contains a "substantial basis for his probable cause findings."

United States v. Alfano, 838 F.2d 158, 162 (6th Cir. 1998), cert. denied, 488 U.S. 910 (1988).[3]

---

[3] The Court notes that unlike in a traditional search warrant, where the Court would typically review a magistrate judge's finding of probable cause, in this type of case, this Court, a magistrate judge, is reviewing the findings of the issuing judge (herein a District Court judge). See 18 U.S.C. § 2518(1) (requiring that the government

10

"The basic standards for a wiretap are similar to those for a search warrant, but there must also be strict compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520." Alfano, 838 F.2d at 161. Title 18 U.S.C. § 2518, governing the procedure for interception of a wire, oral, or electronic communication, requires that each application "be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application." 18 U.S.C. § 2518(1) (1998). In relevance to this case, 18 U.S.C. § 2518(1) requires that each application include:

> (a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;
>
> (b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued . . . ;
>
> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;
> . . . .

The issuance of a wiretap requires "no specific formula," and the "evidence must be judged on the totality of the circumstances[.]" Alfano, 838 F.2d at 161 (citation omitted). Wiretaps should never be utilized as the first step in a criminal investigation. United States v. Giordano, 416 U.S. 505, 515 (1974). Accordingly, the necessity requirement of § 2518(1)(c) is "simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 415 U.S. 143, 153 n.12 (1974). Thus, an application satisfies § 2518(1)(c) if it serves to inform the court to which it is made "of the

---

apply for electronic interception to a "judge of competent jurisdiction"). Nonetheless, the Court believes the standard of review to be the same.

reasons for the investigators' belief that non-wiretap techniques have been or will likely be inadequate." United States v. Lambert, 771 F.2d 83, 91 (6th Cir. 1985). The government is not required to prove in an application that "every other conceivable method [of investigation] has been tried and failed or that all avenues of investigation have been exhausted." Alfano, 838 F.2d at 163; see also Lambert, 771 F.2d at 91 (stating that 18 U.S.C. § 2518(1)(c) and (3)(c) "do not require that the police officials exhaust every conceivable non-wiretap investigative technique," and explaining that "[a]ll that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority").

Whether an application satisfies § 2518(1)(c) must be determined "'in a practical and common sense fashion.'" United States v. Rice, 478 F.3d 704, 717 (6th Cir. 2007) (quoting United States v. Landmesser, 553 F.2d 17, 20 (6th Cir. 1977), cert. denied, 434 U.S. 855 (1977). An application supported by "a purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand" would not comply with the statute. Landmesser, 553 F.2d at 20. But the mere fact that an application's supporting affidavit rests *in part* on general statements of the affiant's prior experience with various non-wiretap investigative procedures does not render the application insufficient. See id. (stating that "the prior experience of investigative officers is indeed relevant in determining whether other investigative procedures are unlikely to succeed if tried"). Suppression is the appropriate remedy in cases where fruits of evidence are obtained through a warrant application not meeting the necessity requirement, in violation of Title III. Rice, 478 F.3d at 709 (citing Giordano, 416 U.S. at 524-45).

In this case, the Defendants make two overlapping arguments related to the wiretaps procured by the Government. The Defendants' procedural argument, requesting that the Court allow an evidentiary hearing to allow evidence outside of that which is included in the two affidavits to be

considered as to whether the Government's applications met the necessity requirement of § 2518(1)(c), will be addressed first. Second, the Court will turn to the Defendants' substantive argument that the wiretap applications did not meet the necessity requirement in this case and that their products should thus be suppressed.

*(A) Request for an Evidentiary Hearing*

At the May 13, 2011 hearing, the Defendants sought to introduce the testimony of Agent Poston for consideration related to their argument about the necessity of the wiretaps procured by the Government in this case. The Defendants argued that the Court should consider testimony from Agent Poston about what traditional techniques the agents investigating their case had employed prior to the Government's applications to intercept calls, and about the evidence produced by those techniques. The Defendants contended that the Court's review of the wiretap authorization should not be limited to the four corners of the affidavit and argued that the only real way for the Court to determine if the necessity requirement of § 2518(1)(c) was met in this case is for it to hear what evidence the Government had at the point at which it applied for the wiretap orders.

The Government responded at the hearing that the affidavits of Agent Poston were all that the district judge had in front of him when he found the applications sufficient to issue orders authorizing wiretaps in this case. The Government further argued that allowing evidence outside of that contained within the affidavits to be considered by this Court would essentially amount to the Court making its own decision as to whether wiretaps should have been authorized in this case, the determination of which was already made by the district judge, rather than appropriately reviewing the issuing court's decision. The Government asserted that the District Court here was not presented with the testimony of Agent Poston and contended that the District Court already found, on the basis

of the affidavits alone, that the wiretaps authorized here would help reveal the full scope of the conspiracy and were necessary as such.

At the May 13 hearing, the parties discussed Rice, 478 F.3d 704. In Rice, the Sixth Circuit held that the district court did not err when it suppressed the fruits of a Title III wiretap. Id. at 706. The affidavit upon which the wiretap application was based listed the alternative investigative procedures, which had been utilized up until the point at which the application was made, and it summarized them as having produced "'minimal results.'" Id. at 707. The district court in Rice found that the statements made in the affidavit discussing the dangerousness of physical surveillance of the targets of the investigation in that case in fact indicated to an issuing judge that the agents in that case had already conducted physical surveillance and had information specific to the defendant that he carried firearms and was violent. Id. In fact, the agent who issued the affidavit testified at the suppression hearing[4] to the effect that no physical surveillance had been conducted, and the agents had no specific information related to the defendant and firearms. Id. The district court thus held that the statements related to physical surveillance included in the affidavit were misleading and recklessly made. Id. at 708-09.

---

[4]The Defendants cited Rice at the May 13, 2011 motion hearing in this case in part to support their argument that an evidentiary hearing, at which Agent Poston should testify, must be held. This argument was made because the affiant agent in Rice testified at the suppression hearing and answered questions related to his investigation of the case prior to making the affidavit submitted as the wiretap application in that case. The Sixth Circuit opinion in Rice, however, does not discuss any issues related to whether the agent's testimony on those matters should have been allowed or required or even indicate that either party challenged the fact that he was testifying. Thus, while Rice stands as an example that such evidence outside of the four corners of the affidavit has been considered by district courts in the Sixth Circuit, the Court finds that Rice provides no framework for analyzing whether and when evidentiary hearings as to necessity of wiretaps should or may be held. Further Rice, unlike this case, was a case where there were allegations of misleading or improper statements in the affidavit.

14

Further, the district court in <u>Rice</u> found that the confidential source discussed in the affidavit had no information specifically pertaining to the defendant and that the information included in the affidavit from both the confidential source and regarding pen registers and telephone tolls was generalized and generic as to the way drug trafficking operations normally conduct themselves. <u>Id.</u> at 708. In sum, the district court found that the government had used the wiretap as the first step in its investigation of the defendant and that the affidavit did not indicate that the government had seriously considered other investigative techniques to be used against the specific defendant. <u>Id.</u> The Sixth Circuit in <u>Rice</u> found that the district court had not committed clear error in finding that the statements regarding physical surveillance were made recklessly. As to the necessity requirement, the district court reformed the affidavit by removing the recklessly made statements after determining that it could not consider the misleading information in deciding whether the requirement was met. The Sixth Circuit held that the district court did not err in finding that what was left in the affidavit amounted mainly to insufficient, "generalized and uncorroborated information," and that the affidavit did not "prove 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" <u>Id.</u> at 711 (quoting <u>United States v. Stewart</u>, 306 F.3d 295, 304 (6th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1138 (2003)). Lastly, the Sixth Circuit affirmed the district court's ruling that the good faith exception under <u>United States v. Leon</u>, 468 U.S. 897 (1984), does not apply to Title III wiretap warrants issued improperly. <u>Id.</u> at 713-14.

The parties also cited <u>Stewart</u>, 306 F.3d at 304, analogizing this situation to one in which a hearing to determine the sufficiency of the evidence establishing probable cause for the issuance of a traditional search warrant is held pursuant to <u>Franks v. Delaware</u>, 438 U.S. 391 (1978). In <u>Stewart</u>, also dealing with a drug conspiracy, the defendants moved to suppress the evidence

produced by a wiretap and also requested an evidentiary hearing related to the wiretap. 306 F.3d at 303-04. Similar to the arguments made by the Defendants in this case, after the denial of their motions to suppress, the Stewart defendants argued on appeal that "the affidavit used to obtain the wiretap warrant did not satisfy the requirements of 18 U.S.C. § 2518(1)(c) and, further, that they were improperly denied an evidentiary hearing on this matter in violation of Franks, because some of the statements in the affidavit were either knowingly false or made with reckless disregard as to their veracity." Id. (citation omitted).

> Discussing Franks, the Sixth Circuit in Stewart explains:
>
> the Supreme Court recognizes a defendant's right to challenge the sufficiency of a previously issued and executed warrant by attacking the statements made in an affidavit in support of the warrant. In order to obtain a hearing, the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit. If the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. The defendant must specifically point to the disputed portions of the challenged affidavit, and must support these charges with an offer of proof. If the defendant meets this burden, the court must then reconsider the affidavit without the disputed portions and determine whether probable cause still exists. If probable cause does not exist, the court must hold a full evidentiary hearing to determine whether the affidavit was properly submitted.

Id. at 304-05 (citations omitted). Accordingly, the Sixth Circuit in Stewart determined that the district court's denial of a Franks evidentiary hearing was proper because the defendants "merely argued that electronic surveillance was not necessary under the circumstances because other law enforcement techniques were successful . . . ," and the defendants did not present any affidavits on their behalf to attempt to prove that the affidavits which served as the basis for the wiretap applications were in any way false. Id. at 305.

16

Much like the Defendants in <u>Stewart</u>, the Defendants in this case wish this Court to hold a <u>Franks</u>-like hearing but do not argue within the <u>Franks</u> framework. At the May 13 hearing, the Defendants expressly stated that they made no allegations nor had any evidence to support an argument, that any statements included in Agent Poston's affidavits were made with reckless disregard for the truth, were false, or were even misleading. The Defendants in this case request an evidentiary hearing with testimony about the investigative techniques and their products in this case strictly because they argue that the Court should consider this evidence outside of the contents of the affidavits in making a fully informed determination as to whether the affidavits included "full and complete statement[s] as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." <u>See</u> 18 U.S.C. § 2518(1)(c).

The Court declines to allow such a hearing at this time. The Court finds that the district judge, in this case District Judge Thomas W. Phillips, was in the best position to review the totality of the circumstances as they appeared at the time and that his determination is thus entitled to great deference by this Court. <u>See</u> <u>Alfano</u>, 838 F.2d at 162. Accordingly, like the Sixth Circuit did in <u>Stewart</u>, the Court finds that it should consider only the statements and information contained within the four corners of the October 20 and November 5 affidavits, as those documents were all that was before the district judge when he made his determination to authorize the wiretaps in this case.

As a final matter on the Defendants' request for an evidentiary hearing, the Court notes a distinction between alleging that a wiretap was issued based on false or misleading statements and requesting a <u>Franks</u>-like hearing to establish such, and a party conceding that it has no evidence and makes no allegations of falsity or misleading statements but wants to delve into the

17

facts and details of an investigation before trial, merely to determine if they are sufficient. In cases like the latter, as the Court faces here, three primary problems arise. First, the Defendants' request appears to be an effort to discover the Government's case, beyond that which is allowed by the rules governing discovery, through an opportunity to explore with Agent Poston the entire breadth and details of law enforcement's investigation of the Defendants, under the guise of having the Court determine anew if the requirements for issuing a wiretap were met. This is impermissible. Second, the Defendants' request requires de novo review of the district court's findings. This, too, would be improper if the request for an evidentiary hearing was granted. If the Court held the requested hearing, the de novo review would take place after a contested hearing with cross-examination of Agent Poston, which would not replicate the evidence which was before the district court when it determined the wiretap was proper, and would put before the Court more evidence than 18 U.S.C. § 2518(1)(c) requires. Lastly, the Court granting the Defendants' request here would require the Court to grant requests for evidentiary hearings in all wiretap challenges and to allow all defendants to explore and discover the entirety of law enforcement's investigations without any preliminary showing that the wiretaps procured by the government were insufficient or were based on affidavits including false or misleading statements. For all of these reasons, the Court finds that an evidentiary hearing in circumstances such as those in this case would be improper.

### (B) Necessity of Wiretap

The Defendants in this case do not contend that probable cause for the issuance of an order to intercept wire communications did not exist here. Instead, the Defendants argue that the affidavits upon which the wiretap applications were based in this case failed to meet the necessity requirement of § 2518(1)(c). As stated above, an affidavit in support of an application for

18

authorization to intercept communications requires both "a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued," and "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(b)-(c). The affidavit must instruct the issuing court why law enforcement believes that other traditional investigate techniques, which need not include every imaginable investigative method, "have been or will likely be inadequate." Lambert, 771 F.2d at 91; see also Alfano, 838 F.2d at 163.

At the May 13, 2011 motion hearing in this case, the Defendants asserted that none of the investigative techniques utilized by the Government had failed to succeed at the time of the wiretap applications and that the interception of communications was thus unnecessary. In Stewart, discussed more fully above, the Sixth Circuit found that, "[i]n endeavoring to secure a wiretap warrant, the government need not prove the impossibility of other means of obtaining information." 306 F.3d at 305. In that case, the law enforcement officer's affidavit was over 100 pages long, and it detailed the previously utilized investigative techniques of confidential informants, cooperating witnesses, consensual recordings, physical surveillance, telephone recordings, and controlled drug purchases. Id. Rather than finding that the detail and extent of the already three-year-long investigation detailed in the agent's affidavit showed the lack of necessity of a wiretap in that case, the district court and Sixth Circuit found that these details showed that law enforcement had given the "serious consideration" to other non-wiretap investigative techniques required in these cases, and that the government in that case could not have discovered the whole scope of the drug conspiracy in a "relatively safe manner," had it not obtained the wiretaps. Id. at 305-06.

Moreover, "the mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance." Id. at 305. Wiretaps are "particularly appropriate" in situations like the investigation of drug trafficking organizations in both Stewart and the instant case, where conspirators typically rely on telephones to conduct their criminal enterprise. Id. at 305-06. Additionally in Stewart, in affirming the district court's denial of the defendants' suppression motions, the Sixth Circuit noted that the defendants had not put forth any evidence to rebut the government's claim that utilizing traditional investigative techniques would have been dangerous to law enforcement personnel. Id. at 306.

In this case, the affidavits provided to the district judge as the basis for wiretap applications on October 20, 2010 and November 5, 2010 were sufficiently detailed and included both more generalized statements about drug trafficking organizations made based on the training and experience of Agent Poston and specifics about the investigation of the Defendants' alleged drug conspiracy. The affidavits each explain the affiant's view as to the need for the interception, the evidence expected to be obtained through the use of the wiretaps, and the alterative investigative techniques utilized and/or considered, along with the reasons why each had been or would be inadequate in this case. The mere fact that the investigators in this case had already attained some level of understanding as to the workings of the target organization did not preclude them from seeking and successfully obtaining the authorization for wiretaps. As in Stewart, the level of detail and amount of evidence related to the instant case provided in the affidavits shows more that the officers had give serious consideration to other investigative techniques and that they were not attempting to use the wiretaps as the initial step in their investigation, as is prohibited. See Lambert, 771 F.2d at 91; see also Giordano, 416 U.S. at 515.

20

Specifically in this case, the secluded and tight-knit nature of the community in which the suspects resided and allegedly conducted many of the activities related to their organization, together with the fact that the members of the organization each were related to or a longstanding associate of Defendant Kevin Trent Bussell, as described in the affidavits, made many of the alternative investigative techniques, such as discarded trash inspection, physical surveillance, and infiltration of undercover officers, dangerous, difficult, or impossible. Additionally, the affidavits indicated, and the Court finds, that the agents investigating this case would have been unable to discover the full scope of the alleged conspiracy, including its members and instrumentalities, without the wiretaps of Defendant Kevin Trent Bussell's home and cellular telephones, which were authorized by the district judge. While the Defendants claim that the utilization of two cooperating individuals and the completion of several controlled drug purchases show the lack of necessity of the wiretaps, the affidavits make clear that the confidential informants in this case had limited access to the information about the full scope of the conspiracy and the involvement of other individuals sought by law enforcement to establish sufficient evidence for a successful prosecution in this case.

After reviewing the contents within the four corners of both the October 20, 2010 and November 5, 2010 affidavits of Agent Poston provided to the district judge, the Court finds that each of the affidavits provided as the basis for applications to intercept communications contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," as needed under the necessity requirement of § 2518(c). Each affidavit discusses many other investigative procedures and explains whether they had been attempted in this case up to that point and the reasons why they would be inadequate, or why the techniques would be dangerous for law enforcement or cooperating witnesses, as applied specifically to this case. Accordingly, the Court finds that the

necessity requirement of § 2518(c) was met in this case and recommends that the Defendants' motion to suppress the intercepted communications in which they participated be denied.

## IV. CONCLUSION

After carefully considering the evidence, the parties' filings and arguments, and the relevant legal authorities, the Court finds no basis to suppress the intercepted communications in this case. For the reasons set forth herein, it is **RECOMMENDED** that Defendant Leonard Bussell's Motion to Suppress All Intercepted Communications Wherein Leonard Bussell Is a Participant in the Communication [**Doc. 171**], as adopted by Defendant Kevin Trent Bussell and Defendant Geneva Bussell [**Doc. 343**], be **DENIED**.[5]

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.    
United States Magistrate Judge

---

[5]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).